IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:13-CV-742-FL

| | |
|---|---|
| JUDY BUTTS LUCAS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

In this action, plaintiff Judy Butts Lucas ("plaintiff" or, in context, "claimant") challenges the final decision of defendant Acting Commissioner of Social Security Carolyn W. Colvin ("Commissioner") denying her application for supplemental security income ("SSI") on the grounds that she is not disabled. The case is before the court on the respective parties' motions for judgment on the pleadings. (D.E. 23, 27). Each party filed a memorandum in support of its motion. (D.E. 24, 28). The motions were referred to the undersigned Magistrate Judge for a memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (*See* Public D.E. dated 1 July 2014). For the reasons set forth below, it will be recommended that the Commissioner's motion be allowed, plaintiff's motion be denied, and the final decision of the Commissioner be affirmed.

I.  **BACKGROUND**

   A.  **Case History**

Plaintiff filed an application for SSI on 20 October 2010, alleging a disability onset date of 20 June 2005. Transcript of Proceedings ("Tr.") 15. The application was denied initially and upon reconsideration, and a request for hearing was timely filed. Tr. 15. On 2 May 2012, a

hearing was held before an Administrative Law Judge ("ALJ"), at which plaintiff and a vocational expert testified. Tr. 29-46. In a written decision dated 16 May 2012, the ALJ found that plaintiff was not disabled and therefore not entitled to SSI. Tr. 15-25. Plaintiff timely requested review by the Appeals Council. Tr. 10-11. On 22 August 2013, the Appeals Council denied the request for review. Tr. 6-8. On 9 September 2013, the Appeals Council set aside its earlier denial and admitted an additional exhibit, an August 2013 medical source statement from plaintiff's physician's assistant discussed further below (Tr. 400), but again denied the request for review. Tr. 1-5. At that time, the decision of the ALJ became the final decision of the Commissioner. 20 C.F.R. § 416.1481. Plaintiff commenced this proceeding for judicial review on 23 October 2013, pursuant to 42 U.S.C. § 1383(c)(3). (*See In Forma Pauperis* ("IFP") Mot. (D.E. 1); Order Allowing IFP Mot. (D.E. 5); Compl. (D.E. 6)).

B.     **Standards for Disability**

The Social Security Act ("Act") defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The Act defines a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D). "[A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 1382c(a)(3)(B).

The disability regulations under the Act ("Regulations") provide the following five-step analysis that the ALJ must follow when determining whether a claimant is disabled:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. . . .
>
> (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. . . .
>
> (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in [20 C.F.R. pt. 404, subpt. P, app. 1] ["listings"] and meets the duration requirement, we will find that you are disabled. . . .
>
> (iv) At the fourth step, we consider our assessment of your residual functional capacity ["RFC"] and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. . . .
>
> (v) At the fifth and last step, we consider our assessment of your [RFC] and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled. . . . .

20 C.F.R. § 416.920(a)(4)(i)-(iv).

The burden of proof and production rests with the claimant during the first four steps of the analysis. *Pass*, 65 F.3d at 1203. The burden shifts to the Commissioner at the fifth step to show that alternative work is available for the claimant in the national economy. *Id.*

In the case of multiple impairments, the Regulations require that the ALJ "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If a

3

medically severe combination of impairments is found, the combined impact of those impairments must be considered throughout the disability determination process. *Id.*

### C. Findings of the ALJ

Plaintiff was 37 years old on the alleged onset date of disability and 44 years old on the date of the administrative hearing. *See* Tr. 24 ¶ 6; 31. She testified that she did not complete high school and was found by the ALJ to have a limited education. Tr. 32; 24 ¶ 7. Her past relevant work includes work was comparable to that of a courier or outside deliverer. Tr. 24 ¶ 5.

Applying the five-step analysis of 20 C.F.R. § 416.920(a)(4), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since her alleged onset of disability. Tr. 17 ¶ 1. At step two, the ALJ found that plaintiff had the following medically determinable impairments that were severe within the meaning of the Regulations: fibromyalgia; degenerative disc disease; insulin-dependent diabetes mellitus with neuropathy; hypertension; and depression. Tr. 17 ¶ 2. At step three, the ALJ found that plaintiff's impairments did not meet or medically equal any of the listings. Tr. 17 ¶ 3.

The ALJ next determined that plaintiff had the RFC to perform light work[1] with certain limitations. Tr. 18 ¶ 4. The specific limitations were as follows:

---

[1] Title 20, C.F.R. § 416.967(b) defines "light work" as involving

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b). The *Dictionary of Occupational Titles* ("DOT") defines "light work" as:

> Exerting up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work.

> The claimant can sit, stand, and walk for up to 6 hours in an 8-hour day. She requires a work environment that would permit her to change between the sitting and standing positions every 30-45 minutes (i.e. a "sit/stand option"). She can lift 20 pounds occasionally and can lift and carry 10 pounds frequently. She has a decreased ability to concentrate on and attend to work tasks to the extent that she can perform only simple, routine, repetitive tasks.

Tr. 19 ¶ 4.

At step four, the ALJ found that plaintiff was unable to perform her past relevant work. Tr. 24 ¶ 5. At step five, the ALJ accepted the testimony of a vocational expert and found that there were jobs in the national economy existing in significant numbers that plaintiff could perform, including jobs in the occupations of cashier II, mail clerk, and sales attendant. Tr. 25 ¶ 9. The ALJ accordingly concluded that plaintiff was not disabled. Tr. 25 ¶ 10.

### D. Standard of Review

Under 42 U.S.C. § 405(g), judicial review of the final decision of the Commissioner is limited to considering whether the Commissioner's decision is supported by substantial evidence in the record and whether the appropriate legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Unless the court finds that the Commissioner's decision is not supported by substantial evidence or that the wrong legal standard was applied, the Commissioner's decision must be upheld. *See Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972). Substantial evidence is "'such relevant evidence as a reasonable mind might

---

> Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible. NOTE: The constant stress and strain of maintaining a production rate pace, especially in an industrial setting, can be and is physically demanding of a worker even though the amount of force exerted is negligible.

DOT app. C § IV, def. of "L-Light Work" (U.S. Dep't of Labor 4th ed. rev. 1991), http://www.oalj.dol.gov/libdot.htm (last visited 3 Nov. 2014). "Light work" and the other terms for exertional level as used in the Regulations have the same meaning as in the DOT. *See* 20 C.F.R. § 416.967.

accept as adequate to support a conclusion.'" *Perales*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla of evidence, but somewhat less than a preponderance. *Perales*, 402 U.S. at 401.

The court may not substitute its judgment for that of the Commissioner as long as the decision is supported by substantial evidence. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). In addition, the court may not make findings of fact, revisit inconsistent evidence, or make determinations of credibility. *See Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). A Commissioner's decision based on substantial evidence must be affirmed, even if the reviewing court would have reached a different conclusion. *Blalock*, 483 F.2d at 775.

Where, as here, the Appeals Council considers additional evidence before denying the claimant's request for review of the ALJ's decision, "the court must 'review the record as a whole, including the [additional] evidence, in order to determine whether substantial evidence supports the Secretary's findings.'" *See, e.g., Felts v. Astrue*, No. 1:11CV00054, 2012 WL 1836280, at *1 (W.D. Va. 19 May 2012) (quoting *Wilkins v. Sec'y Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir.1991)). Remand is required if the court concludes that the Commissioner's decision is not supported by substantial evidence based on the record as supplemented by the evidence submitted at the Appeals Council level. *Id.* at *1–2.

Before a court can determine whether a decision is supported by substantial evidence, it must ascertain whether the Commissioner has considered all relevant evidence and sufficiently explained the weight given to probative evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). "Judicial review of an administrative decision is impossible

without an adequate explanation of that decision by the administrator." *DeLoatche v. Heckler*, 715 F.2d 148, 150 (4th Cir. 1983).

## II. OVERVIEW OF PLAINTIFF'S CONTENTIONS

Plaintiff contends that the court should award her benefits or, alternatively, remand the case for a new hearing on the grounds that the ALJ erred in (1) his assessment of her credibility and (2) his evaluation of the medical source opinions. Each ground is addressed in turn below.

## III. DISCUSSION

### A. ALJ's Assessment of Plaintiff's Credibility

An ALJ's assessment of a claimant's credibility involves a two-step process. *Craig v. Chater*, 76 F.3d at 593-96; 20 C.F.R. § 416.929(a)-(c); Soc. Sec. R. 96–7p, 1996 WL 374186, at *1 n.1; 2 (2 July 1996). First, the ALJ must determine whether plaintiff's medically documented impairments could cause plaintiff's alleged symptoms. Soc. Sec. R. 96-7p, 1996 WL 374186, at *2. Next, the ALJ must evaluate the extent to which the claimant's statements concerning the intensity, persistence, or functionally limiting effects of the symptoms are consistent with the objective medical evidence and the other evidence of record. *See id.; see also* 20 C.F.R. § 416.929(c)(3) (setting out factors in addition to objective medical evidence in evaluation of a claimant's pain and other symptoms). If the ALJ does not find plaintiff's statements to be credible, the ALJ must cite "specific reasons" for that finding that are "supported by the evidence." Soc. Sec. R. 96-7p, 1996 WL 374186, at *2, 4; *Jonson v. Colvin*, No. 12cvl742, 2013 WL 1314781, at *7 (W.D. Pa. 28 Mar. 2013) ("If an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision."); *Dean v. Barnhart*, 421 F. Supp. 2d 898, 906 (D.S.C. 2006).

At the hearing, plaintiff testified to the effect that her impairments were disabling. *See* Tr., *e.g.*, 19-20 ¶ 4. In assessing plaintiff's allegations, the ALJ made the step-one finding that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Tr. 22 ¶ 4. At the second step of the credibility assessment, the ALJ found that plaintiff's allegations were not fully credible and, specifically, that "the [plaintiff's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the . . . [RFC] assessment." Tr. 22 ¶ 4.

With respect to plaintiff's back and related impairments, the ALJ explained his ruling as follows:

> She has degenerative disc disease of the lumbosacral spine but she does not have any clinical signs of nerve root compression which might be expected based on the degree of pain alleged. She has had limitation of motion of the spine and hips on some occasions but this has not been a consistent finding. She has no impairment of gait or station.
> . . . .
> The claimant has not required such aggressive measures for pain relief as ongoing use of steroid medication, epidural injections, application of TENS equipment, or enrollment in physical therapy or a pain management program. The treatment regimen, therefore, indicates that the claimant's pain is not as intractable as alleged.

Tr. 22 ¶ 4.

Plaintiff challenges the ALJ's credibility determination, in part, on the grounds that the ALJ erred in finding that plaintiff "does not have any clinical signs of nerve root compression." Tr. 22 ¶ 4. She cites to the report on an MRI of plaintiff's lumbar spine taken on 10 February 2012 (Tr. 399) at the direction of family medicine physician Gonzalo Cabral, M.D., who treated plaintiff from November 2011 to March 2012 (*see* Tr., *e.g.*, 212-14). Nowhere, though, does the MRI report state that plaintiff had nerve root compression. With respect to the L4-L5 and L5-S1 joints, the report states simply that disc protrusion contacts the traversing nerve roots. Tr. 399.

With respect to the L3-L4 joint, the report states that a left subarticular recess stenosis "*possibly* imping[es] the traversing L-4 nerve root." Tr. 399 (emphasis added).

Moreover, the MRI report was issued about three months prior to the hearing before the ALJ and issuance of the ALJ's decision. There has been no showing that the findings regarding contact by disc protrusions with nerve roots at that time reflects plaintiff's prior condition.

Plaintiff also cites to the consultative physical examination by state agency physician physiatrist Judit Staneata, M.D. on 26 February 2011. Tr. 342-46. Again, though, Dr. Staneata makes no finding that plaintiff had nerve root compression. To the contrary, Dr. Staneata stated that "peripheral neuropathy is more likely secondary to diabetes in a stocking glove distribution." Tr. 345.

Plaintiff has identified no records expressly diagnosing her with nerve root compression, and the court has not located any. Plaintiff states, without citation to any evidence, that certain symptoms plaintiff has manifested, including neurological symptoms in her legs, establish that she has nerve root compression. Such speculation is no substitute for evidence that a medical source has found plaintiff to have nerve root compression.

Plaintiff also contends that the ALJ erred in finding that plaintiff's limitation of motion of the spine and hips "has not been a consistent finding." Tr. 22 ¶ 4. But she identifies only three medical records among the 200-some pages of medical records in the administrative file making the finding that plaintiff had such a limited range of motion—the 26 February 2011 evaluation by Dr. Staneata (Tr. 345); 22 September 2011 office visit note of rheumatologist Fernando Castro, M.D. (Tr. 375); and 27 October 2011 office visit note of Dr. Castro (Tr. 381), plaintiff's only other visit with him.

While Dr. Staneata's finding is clearly related to the spine, the finding in Dr. Castro's 22 September 2011 note is ambiguous. The note states under the heading "<u>spine, ribs, and pelvis</u>": "Restricted full ROM in both hips due to[] pain in lateral aspects especially full external rotation and flexion." Tr. 375. Elsewhere, under the headings "<u>right lower extremity</u>" and "<u>left lower extremity</u>," the evaluation states "Hip: Normal ROM." Tr. 374-75. The ALJ interpreted the evaluation to indicate "mild limitation of motion of . . . both hips but her range of motion testing was otherwise normal in the spine and joints." Tr. 20 ¶ 4.

At the visit the following month, Dr. Castro reported that plaintiff then had full range of motion of the hips. Tr. 381; *see also* Tr. 20 ¶ 4 (ALJ's discussion of finding). Although he found that she had limited range of motion of the spine, he attributed it to a fall she had a few days earlier: "spine: decreased flexion and tender @ lumbar spine bilaterally due to[] recent fall . . . ." Tr. 381; *see also* Tr. 379; 20 ¶ 4 (ALJ's discussion of finding).

Plaintiff also cites to a 10 August 2011 office visit note by treating physician's assistant Julie Queen, PA-C (Tr. 363) and a 28 November 2011 office visit note apparently by Dr. Cabral (Tr. 389). Neither of these records, however, addressed range of motion of the spine or hips.

Plaintiff argues that the ALJ improperly required objective proof of plaintiff's pain. The court disagrees. "Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." *Craig*, 76 F.3d at 595. For this and the other reasons stated, the court concludes that the ALJ's determinations in his

credibility analysis regarding nerve root compression and limitation of motion of the spine and hips are supported by substantial evidence and based on proper legal standards.

Moreover, these determinations comprise only a portion of the ALJ's credibility determination, and plaintiff did not challenge the remaining portions. The numerous additional reasons the ALJ gave for finding plaintiff less than fully credible include his finding regarding the conservative course of treatment plaintiff had, quoted above. Among other reasons are the following:

> The claimant has not developed any diabetic retinopathy, nephropathy, or peripheral arterial disease and she has not had any episodes of ketoacidosis. She has diabetic neuropathy with some loss of sensation in her hands and feet. She has had muscle weakness in the legs on some occasions but this, also, has not been a consistent finding. She does not have any muscle weakness in the arms or hands. As noted above, she has no impairment of gait or station related to her diabetic neuropathy.
> . . . .
> The claimant's hypertension has been well-controlled and she has not developed any complications related to this condition such as retinopathy, nephropathy, ischemia, or heart failure.
> . . . .
> In addition, the medical evidence and observations by the Administrative Law Judge do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations of functional restrictions are not fully credible.

Tr. 22 ¶ 4; 23 ¶ 4.

The ALJ's credibility determination finds support in the opinions of the non-examining state agency medical consultants. As described by the ALJ, they found as follows:

> The state agency medical consultants' opinions were given only some weight. Jack Drummond, M.D. found that the claimant could perform a wide range of light work [*see* Tr. 54-55 (28 Mar. 2011)] while Melvin Clayton, M.D. found that the claimant could perform a wide range of medium work [*see* Tr. 67-69 (28 June 2011)] (Exhibits 2A-3A). The Administrative Law Judge finds that Dr. Drummond's assessment is more consistent with the medical record, including the subsequent MRI of the lumbosacral spine, and also finds that this assessment

> gives appropriate consideration to the claimant's symptoms. Therefore, the Administrative Law Judge gives greater weight to Dr. Drummond's opinion. Bonny Gregory, M.D. [*see* Tr. 55-57 (17 Mar. 2011] and Ben Williams, Ph.D. [*see* Tr. 69-70 (28 June 2011)] found that the claimant could perform the mental demands of a wide range of unskilled work (Exhibits 2A and 3A). These assessments are consistent with the longitudinal medical record and the Administrative Law Judge gives great weight to these opinions.

Tr. 23-24 ¶ 4. Plaintiff does not challenge the ALJ's assessment of these sources' opinions.

It is apparent that the ALJ did not ignore plaintiff's allegations. His RFC determination includes limitations responsive to concerns expressed by plaintiff, including restriction to light work and the need for a sit-stand option. *See* Tr. 19 ¶ 4.

The court concludes that plaintiff's challenge to the ALJ's credibility determination is meritless. It should accordingly be rejected.

### B. ALJ's Evaluation of Medical Source Opinion Evidence

Plaintiff contends that the ALJ erred in his assessment of the opinions of Dr. Staneata and physician's assistant Kara Schrader, PA-C. The court finds no error.

#### 1. Applicable Legal Principles

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). An ALJ must consider all medical opinions in a case in determining whether a claimant is disabled. *See id.* § 416.927(c); *Nicholson v. Comm'r of Soc. Sec. Admin.*, 600 F. Supp. 2d 740, 752 (N.D.W. Va. 2009) ("Pursuant to 20 C.F.R. §§ 404.1527(b), 416.927(b), an ALJ must consider all medical opinions when determining the disability status of a claimant.").

The Regulations provide that opinions of treating physicians and psychologists on the nature and severity of impairments are to be accorded controlling weight if they are well supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *see Craig*, 76 F.3d at 590; *Ward v. Chater*, 924 F. Supp. 53, 55-56 (W.D. Va. 1996); Soc. Sec. R. 96-2p, 1996 WL 374188 (2 July 1996). Otherwise, the opinions are to be given significantly less weight. *Craig*, 76 F.3d at 590. In this circumstance, the Regulations prescribe factors to be considered in determining the weight to be ascribed, including the length and nature of the treating relationship, the supportability of the opinions, and their consistency with the record. 20 C.F.R. § 416.927(d)(2)-(6).

The ALJ's "decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." Soc. Sec. R. 96-2p, 1996 WL 374188, at *5; *see also* 20 C.F.R. § 416.927(d)(2); *Ashmore v. Colvin*, No. 0:11-2865-TMC, 2013 WL 837643, at *2 (D.S.C. 6 Mar. 2013) ("In doing so [i.e., giving less weight to the testimony of a treating physician], the ALJ must explain what weight is given to a treating physician's opinion and give specific reasons for his decision to discount the opinion.").

The same factors used to determine the weight to be accorded the opinions of physicians and psychologists (and other "acceptable medical sources") apply to the opinions of providers who are deemed to be at a different professional level (or so-called "other sources"), including licensed clinical social workers. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *2, 4 (9 Aug. 2006); *see also* 20 C.F.R. § 416.927(c) (evaluation of medical opinions); § 416.913(d)(1)

(including physicians' assistants as "other sources"). As with opinions from physicians and psychologists, the ALJ must explain the weight given opinions of other sources and the reasons for the weight given. *See* Soc. Sec. R. 06-03p, 2006 WL 2329939, at *6 ("[The ALJ] generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."); *Napier v. Astrue*, No. TJS-12-1096, 2013 WL 1856469, at *2 (D. Md. 1 May 2013) ("[T]he ALJ is required to 'explain in the decision the weight given to . . . any opinions from treating sources, non-treating sources, and other non-examination sources who do not work for the [the Social Security Administration].").

The opinions of physicians and psychologists, and other sources on issues reserved to the Commissioner, that is, legal conclusions, are not entitled to special weight because of their source, including statements that the claimant is disabled or unable to work. 20 C.F.R. § 416.927(e)(1), (3). But these opinions must still be evaluated and accorded appropriate weight. *See* Soc. Sec. R. 96-5p, 1996 WL 374183, at *3 (2 July 1996).

### 2. Dr. Staneata's Opinions

Dr. Staneata found that, as described by the ALJ, plaintiff "could perform less than a full range of sedentary work." Tr. 23 ¶ 4. She stated:

> Based on today's examination and clinical findings, the claimant's maximum functional capacity for standing and walking is less than sedentary with more frequent breaks, sitting less than sedentary with more frequent breaks. Assistive device helpful for long distances and uneven terrain. Lifting and carrying occasionally is sedentary. Lifting and carrying frequently is less than sedentary.

Tr. 346.

The ALJ explained that he gave these opinions "little weight":

> Dr. Staneata also provided an examining source statement indicating that the claimant could perform less than a full range of sedentary work (Exhibit 6F). However, at the time of this examination, the claimant was observed to have significant limitation of motion of the spine and to have variable muscle weakness in the legs. Subsequent examinations indicated that these abnormalities were not a consistent finding. Since Dr. Staneata's clinical findings were transient, the Administrative Law Judge gives little weight to this opinion.

Tr. 23 ¶ 4.

Plaintiff challenges the ALJ's assessment, in part, on the grounds that plaintiff's limitation of motion was not transient. As previously discussed, this challenge is baseless.

Plaintiff also argues that Dr. Staneata's finding regarding variable muscle weakness in the legs is improper on the grounds that "plaintiff's muscle strength was only individually evaluated during Dr. Staneata's examination." (Pl.'s Mem. 11). Since, of course, it is plaintiff's burden to prove disability, the alleged fact that Dr. Staneata's evaluation addresses muscle strength only "individually" does not undermine, but tends to support, the ALJ's finding that plaintiff's muscle weakness is transient. In actuality, in the notes of his two office visits with plaintiff, on 22 September 2011 (Tr. 375) and 27 October 2011 (Tr. 382), Dr. Castro gave a rating on muscle strength. Moreover, the rating was normal: "overall: normal muscle strength 5/5." Tr. 375, 382. He observed in both sets of notes that plaintiff denied muscle weakness. Tr. 373, 380. The negative assessment of muscle strength by Dr. Staneata was, to be sure, more detailed, perhaps explaining plaintiff's characterization of her as assessing muscle strength "individually":

> Strength is 4+/5 at the left hip flexors and 5/5 in the rest of the left lower extremity, right lower extremity 3/5 with right hip flexors 4/5 right knee flexors extensors and 5/5 at the ankle with plantar and dorsiflexors.

Tr. 345. But that does not alter the isolated nature of Dr. Staneata's finding of muscle weakness.

Plaintiff further argues that under the Fourth Circuit's decision in *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013), it is improper to expect neurological symptoms to be present at every examination because neurological symptoms are by nature intermittent. *Radford* does recognize that "abnormal physical findings may be intermittent." *Id.* (internal quotation marks omitted). But in the same sentence, the court went on to state that "a claimant may nonetheless prove a chronic condition by showing that he experienced the symptoms over a period of time, as evidenced by a record of ongoing management and evaluation." *Id.* (internal quotations omitted). Thus, a claimant still must make an adequate showing that he suffers from the impairment alleged. Here, the court cannot say that the ALJ erred in finding that plaintiff did not make such a showing demonstrating that limitations in range of motion and muscle strength restricted her to less than sedentary exertional capacity.

As he stated, the ALJ did not reject entirely the opinions of Dr. Staneata. His RFC recognizes limitations in functional areas addressed in Dr. Staneata's opinions, although not to the same degree she posited.

The court concludes that the ALJ's assessment of Dr. Staneata's opinions is supported by substantial evidence and based on proper legal standards. Plaintiff's challenge to it should therefore be rejected.

### 3. Physician's Assistant Schrader's Opinions

Physician's Assistant Schrader, who worked with internist Kerrie Heron, M.D., saw plaintiff on four occasions between 11 January and 17 August 2011. *See* Tr. 354-62, 365-67. She provided three medical source statements, two of which were addressed by the ALJ and plaintiff, one entitled "Questionnaire To Physician Regarding Diabetes For Social Security Disability" (Tr. 368) and the other "Questionnaire To Physician Regarding Fibromyalgia" (Tr.

369).[2] As the ALJ noted, the two statements indicated "that the claimant is unable to perform the exertional demands of even sedentary work and that she is unable to perform any work on a full-time basis (Exhibit 9F)." Tr. 23 ¶ 4. The specific findings indicated that plaintiff had the ability to work only 4 hours a day, stand at one time for 15 minutes, sit at one time for 30 minutes, and lift no weight on an occasional basis. Tr. 368, 369.

The ALJ gave "little weight" to Schrader's opinions on the following grounds:

> The Administrative Law Judge notes that the opinion of a treating physician is entitled to great weight and may be disregarded only if there is persuasive contradictory evidence (Coffman v. Bowen, 829 F.2d 514 (4th Cir. 1987)). However, in this instance, Ms. Schrader is not considered to be an "acceptable medical source" under the Social Security regulations. Further, the Administrative Law Judge notes that this assessment is contradicted by the source's own records, which indicate that the claimant's medical conditions have been controlled with treatment. This assessment is also contradicted by other evidence in the file such as the records from Drs. Castro and Cab[r]al. Therefore, the Administrative Law Judge gives little weight to this opinion.

Tr. 23 ¶ 4.

Plaintiff does not challenge the ALJ's proper determination that Schrader is not an acceptable medical source under the Regulations. She does challenge the ALJ's finding that Schrader's own records contradict her opinions to the extent that he deemed them to show that plaintiff's medical conditions have been controlled with medication. Schrader's records, though, gave no hint of the disabling limitations she opined plaintiff to have and substantiate that the conditions for which Schrader was treating plaintiff were controlled by medication.

Specifically, plaintiff's first visit with Schrader was for a thrush infection for which she was prescribed a medication. Tr. 354. Since there is no mention of the thrush at her visit a month later, it appears as though the treatment was effective.

---

[2] The third statement, entitled "Questionnaire To Physician Regarding Physical Abilities and Limitations" and dated 12 August 2013, is the exhibit submitted initially to and admitted into the record by the Appeals Council. While it still indicates that plaintiff is unable to do work at the sedentary level, it finds her less limited functionally than Schrader's 17 August 2011 statements.

At the remaining visits—on 16 February, 18 May, and 17 August 2011—Schrader reported that "Pt states they [*i.e.*, her illness] are doing well. Pt is taking all meds as directed." Tr. 356, 360, 365. The examinations of plaintiff were normal. Tr. 356, 360, 365. She was continued on her medications for diabetes (Tr. 356, 360, 365); additional medication for hyperlipidemia was prescribed at the February visit, but her triglycerides were found improved at that visit (Tr. 356), and her medications were continued at the subsequent visits (Tr. 360-61, 365-66); and her depression with anxiety was stable in February (Tr. 357), although she was given contact information for a psychiatrist in May (Tr. 361) and was again stable in August (Tr. 366). The court concludes that substantial evidence supports the ALJ's determination regarding the inconsistency of Schrader's records with her opinions.

The same conclusion applies to the ALJ's determination that Dr. Castro's and Dr. Cabral's records contradict Schrader's opinions. The records of Dr. Castro—from plaintiff's visits with him on 22 September (Tr. 372-78, 386) and 27 October 2011 (Tr. 379-85)—substantiate the ALJ's determination that his findings contradict Schrader's assessment that plaintiff had disabling limitations:

> She was seen by Fernando Castro, M.D. of Wilson Arthritis and Osteoporosis in September, 2011. The claimant said that she had diffuse chronic pain especially in the lower back which spread to her legs and she had pain in her neck and shoulders which spread to her arms. She also gave a history of myalgias, stiffness, and paresthesias as well as of sleep disturbance. Dr. Castro's examination found that the claimant had widespread tender points in both upper and both lower extremities. *She had mild limitation of motion of the fingers and of both hips but her range of motion testing was otherwise normal in the spine and joints. She had no signs of synovitis or inflammation. Her muscle strength was normal, rated 5/5, and her gait and station were also normal*. Dr. Castro had x-rays of the lumbosacral spine and the pelvis performed on September 22, 2011. These revealed *mild* degenerative changes in the lumbosacral spine with osteophytes, facet arthropathy, and endplate sclerosis. The x-ray of the pelvis revealed sclerosis and osteophytes in the hip joints. Dr. Castro diagnosed the claimant with fibromyalgia, chronic low back pain, malaise and fatigue, sleep disturbance, and "general symptoms not otherwise specified". He prescribed

18

> treatment with flexeril and relafen and also *recommended exercise*. When the claimant returned to see Dr. Castro in October, 2011, she had limitation of motion of the spine and an antalgic gait *due to a recent injury but she now had a full range of motion of the hips* (Exhibits 10F-11F).

Tr. 20 ¶ 4 (emphasis added).

Dr. Cabral's records—consisting of notes of his 28 November 2011 and 10 January 2012 office visits with plaintiff and related documents (Tr. 387-94)—also substantiate the ALJ's determination that his findings contradict Schrader's opinions of disabling limitations. The records do not contain findings indicating that plaintiff had the severe functional limitations Schrader opined plaintiff had.

As with Dr. Staneata's opinions, the ALJ's RFC determination includes limitations in functional areas addressed in Schrader's opinions. This fact substantiates the ALJ's representation that he gave Schrader's opinions some weight and did not simply disregard them.

The court concludes that plaintiff's challenge to the ALJ's assessment of Schrader's opinions is without merit. It should accordingly be rejected.[3]

## IV. CONCLUSION

For the foregoing reasons, the court concludes that the ALJ's decision is supported by substantial evidence and based on proper legal standards. IT IS THEREFORE RECOMMENDED that the Commissioner's motion (D.E. 27) for judgment on the pleadings be ALLOWED, plaintiff's motion (D.E. 23) for judgment be DENIED, and the final decision of the Commissioner be AFFIRMED.

IT IS ORDERED that the Clerk send copies of this Memorandum and Recommendation to counsel for the respective parties, who shall have until 17 November 2014 to file written objections. Failure to file timely written objections bars an aggrieved party from receiving a de

---

[3] The court has considered the remaining arguments raised by plaintiff, but finds that they fail based on principles discussed herein and do not merit separate discussion.

novo review by the District Judge on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Judge. Any response to objections shall be filed within 14 days after service of the objections on the responding party.

This, the 3rd day of November 2014.

James E. Gates
United States Magistrate Judge